Good morning, Your Honor, and may it please the Court. My name is Caroline DeSalle, and I represent the plaintiffs' appellants. I'd like to reserve two minutes for rebuttal, please. This case concerns defendants' exploitation of California-based U.S. technology companies' products and services to develop spyware and deploy it against unsuspecting targets, including the journalists represented here. Despite the substantial local interest in this case, the uncontested application of U.S. and California law to the case, and the fact that defendants were already litigating related cases in this forum, the District Court dismissed it for forum nonconvenience. That was an abuse of discretion. The District Court committed a foundational error in failing to afford plaintiffs due to deference with respect to their choice of forum, and that error skewed its analysis under the relevant private and public interest factors. Rather than defer to plaintiffs, the District Court deferred to defendants at every single turn. Starting with the first public interest factor, the District Court contradicted explicit and quite specific statements by the U.S. government. It illogically counted Apple's interest in this case against plaintiffs, and it even made up arguments on defendants' behalf in concluding that there was no local interest in this case. So what effect is there on your argument with the Apple litigation being dismissed? Thank you, Your Honor. I think that the fact that the Apple litigation was dismissed underscores the District Court's error in weighing the fact that Apple had litigated its case in this forum against the local interest here. The District Court concluded that, to the extent California has an interest in protecting companies based here against the kinds of unlawful conduct committed by defendants, that Apple adequately represented that interest in this forum, and that's just clear error. There's no requirement that other litigants, that there be no other litigants who can adequately represent an interest. I thought was significant, and please correct me if you think I'm wrong or see this differently, was that Apple, first of all, is headquartered in the District, so they are resident not just in the United States, but in the very district at issue, and then they voluntarily dismissed their case because of the difficulty of litigating it there, and that it couldn't go forward because it was not a convenient forum. So that seems pretty significant for the analysis of whether these plaintiffs who, we have one U.S. citizen and two residents, but none of whom are residents in the Northern District of California. So how, I know you're saying that Apple supports you, but how do you get around that? Your Honor, if I may clarify, Apple did not move to voluntarily dismiss its case because it considered the forum inconvenient for purposes of this litigation. Apple moved to voluntarily dismiss its case because the risk of exposing the developments in its own threat intelligence program through discovery to opponents in this case, to NSO group, had simply become too great to justify the ongoing litigation, and Apple would have had to expose that information to demonstrate damages, et cetera. And so that was a calculation that Apple made, really just a cost-benefit calculation with respect to that litigation. It maintained that the litigation was meritorious, but ultimately concluded that the risk of exposure through discovery was too great. That doesn't undermine the fact that there is other related litigation in this District, which speaks to the private interest factors here and the convenience of litigating this case in this forum. The WhatsApp litigation is proceeding apace in this forum, and in fact, I believe counsel for NSO group are currently at a pretrial conference in the lead-up to a damages trial in that case, just demonstrating the clear practical ease with which NSO group can provide witnesses and evidence, and the court can consider the relevant issues in this forum. But going back to the District Court's error with respect to the local interest here, the District Court flatly contradicted express explicit statements by the U.S. government about its interest in this very case. In November of 2021, the United States government added NSO group, the defendant here, to the entity list because, and I quote, it had engaged in activities contrary to the national security or foreign policy interests of the United States by developing and supplying spyware to foreign governments that use this tool to maliciously target journalists and embassy workers. So how does that make specifically the Northern District of California the appropriate forum as opposed to anywhere else in the United States? Your Honor, the question here is really whether or not Defendant's Preferred Forum Israel is more convenient than California, than Plaintiff's Chosen Forum. This court has considered in multiple instances the U.S. interest in a case to establish the local interest in this forum, and I'll point the court to a few cases there, the Cooper versus Tokyo Electric case, considered the United States interest in compensating its military service members as establishing a local interest in that case in the District of Hawaii there, I believe. NeuralSTEM also establishes that U.S. interests can establish a local interest in the case, and the Otto Candies case from the 11th Circuit also supports that conclusion, but there is a California interest here as well. And please don't take my word for that, look to the amicus brief submitted by Microsoft, Google, and other technology companies establishing the harms that those technology companies suffer as a result of Defendant's deliberate sustained attacks on their infrastructure to develop exploits and then use those exploits to deliver spyware to the targets. I'm sorry, go ahead. So even if there wasn't specifically a California interest, when we're dealing with forum nonconvenience in the context of somebody, say, in Florida says, I don't want to be in California, I'd rather be in Florida, then you look at relative areas of the districts, but here does it matter that they're saying, I want to be in a different country, the defendant says, and therefore you say, does the United States have an interest in it, regardless of whether the specific forum is California, Texas, Florida, and so it makes a difference whether the defendant is saying the other forum should be another country or another state or another jurisdiction. Am I right? That's exactly right, Your Honor, and that really underscores the point that the burden is on defendants throughout the analysis to establish that their preferred alternative forum is strongly favored by the relevant public and private interest groups. So how specific do you think they need to be? So here you are at a motion to dismiss stage, and they know where they are located and their witnesses are located, they make that representation, they don't know that none of the plaintiffs are in this district, they can make that representation, and you argue that the district court shifted the burden by saying that the plaintiffs didn't show that there were witnesses in the forum, but it seems at this stage of the litigation, once the defendants make the prima facie showing of where everything is located, if plaintiffs come forward with nothing, then that is the evidence that all of the witnesses are elsewhere, and I don't see that as burden shifting, I just see it as a reality of the stage of the litigation. So if you don't respond and say, no, we have witnesses here, I don't see how the district court was wrong to note that. Respectfully, Your Honor, that's not an entirely accurate characterization of the record before the district court. Defendants did not identify the specific witnesses that they would seek to call in this case. So how specific do they have to be at that stage? I mean, they say we are located elsewhere, and all of our employees are located elsewhere. Are they supposed to name individuals at that point? Respectfully, Your Honor, yes, this court has made quite clear that there is an evidentiary burden on defendants with respect to that factor to demonstrate not only that there are actual witnesses that it would seek to call from its own country or wherever it argues is inconvenient to be hailed from, but also that they have to establish the materiality and importance of those witnesses to the case. And here, defendants did none of that. I see my time is up. Well, before you run out of time, I want to ask you about the issue with the Apple servers. That seems like pure speculation, that the Apple servers, that some were located in that district and were involved in the activities that are the basis of the complaint. Is there anything other than, gee, Apple's in Northern District and they have some servers? Yes, Your Honor, as the plaintiffs pleaded in their amended complaint, which on a motion to dismiss, the district court was required to credit, and NSO group provided no evidence to detract from any of those allegations. But yes, plaintiffs carefully explained the way that the exploits that were relied on to target them relied on the direct, deliberate, and sustained subversion of Apple infrastructure in California, not only to develop those exploits, but then to use them to direct those attacks against the plaintiffs. And if you look to the WhatsApp litigation, where there have been more evidentiary findings as that case proceeded in this court, it has become clear through discovery that servers that NSO group maintained then did redirect traffic through WhatsApp servers in that case to deploy the attacks against the WhatsApp users there. So there are plenty of factual allegations in the amended complaint to show that Apple was a crucial location of these attacks. Really, the attacks were grounded from Apple headquarters, and that establishes, again, the local interest in this case. As well as local witnesses. Exactly, Your Honor. And that is another point that the district court elided. So we, yes, we would need to rely on third-party evidence from Apple in this case. I do have another question, and I'll ask Judge Beatty to give you some time on rebuttal, because we're taking you over. That one, I actually wanted to jump back to the threshold question of the level of deference that was owed to plaintiffs' choice. And it does seem to me that the district court never actually acknowledged that there was an American citizen plaintiff or two American U.S. resident plaintiffs. And it seems that the district court treated all the plaintiffs as what we called in Boston telecommunications as, what, truly foreign plaintiffs. And Boston telecommunications said, well, it seemed to be drawing almost three levels of deference. There's the U.S.-based plaintiff or U.S. resident or citizen suing in the state in which they live. Then there's the U.S. citizen or resident suing in a state in which they don't live. And then there's the truly foreign plaintiff. Is there any other case law besides Boston telecommunications that seems to draw that distinction? Or how much should we consider that to be not recognizing that to be an abuse of discretion in itself? So the Cariano case, as well as the Boston telecommunications case, both establish that failure to recognize the appropriate level of deference due to plaintiff's choice of is an abuse of discretion and, therefore, subject to reversal by this court. But the Boston telecommunications case, we believe, is squarely on point with our case here. Thank you. All right. I will give you a couple minutes for rebuttal. Good morning, Your Honors. Paul Watford for the appellees. There are two basic questions presented by this appeal. The first is whether Judge Donato committed some sort of legal error in conducting his analysis. The second is whether he engaged in a clear abuse of discretion in weighing the public and the private interest factors in light of the record that the parties put before. Let me start with the legal question. And Judge Sun, I'll turn directly to the question you just posed to my friend on the other side. Judge Donato did not make an error in the level of deference owed to the plaintiff's choice of form here because none of the plaintiffs was a resident of the Northern District of California. That is the key factor that determines whether less deference is owed to the plaintiff's choice of form or whether that full heightened level of deference is owed. But what role, going back to the question that I had asked, what role does it play when the defendant is from another country and is seeking a form of nonconvenience argument based on their being in another country? I think your argument is correct if we have two defendants in the United States and one says I have no connection with the forum district, I'm in Florida or something. But does it matter if they're from another country? No, Your Honor. We have plenty of cases in which the defendants are located overseas and the exact same rule applies. What the court is trying to get at in determining the level of deference is you start out with a presumption that, hey, the plaintiff has chosen this form, presumably that means it's a convenient form for everyone. That presumption is entitled to less weight, this court has said, when the plaintiff is not suing in his or her home forum. Do you think, I mean it seems clear to me that Boston Telecommunications drew a distinction between a U.S. citizen or resident suing outside of their state of residence and what they call the truly or I can't remember the exact word, foreign plaintiff. So and then from the briefing, the answering brief, I don't see any acknowledgment of that distinction and from reading the district court's order, it seemed to me that the district court really was treating all the plaintiffs here as if they were truly foreign. So can you point me to something, are you disagreeing with my reading of Boston Telecommunications or are you disagreeing with my reading of the district court's order? Or both? I think I'm disagreeing a little bit with your reading of Boston Telecom because you're right that that is the one case, you asked my opponent if there were any other cases, there is no other case in which the court has made that kind of very granular distinction between levels of deference. In that case, however, what the court stressed was that the plaintiff at issue was both a U.S. citizen and a resident of the United States. That is not the case here. The U.S. citizen plaintiff that we're talking about is a resident of El Salvador. So the rule that Boston Telecom was articulating doesn't even apply in this case to begin with. But the more important point, I think, Your Honor, is that the, you're right that the court there seemed to set up these three levels of deference, okay? My submission to you is that whatever the difference between the lesser deference that a truly foreign plaintiff gets and the lesser deference that a U.S. citizen, the kind of intermediate, is of no moment here because Judge Donato did not view this as a closed case. He acknowledged that foreign non-dismissals should be used sparingly. But what he said is that this case is tailor-made for a foreign non-dismissal. And I'll get into why, when you start to weigh the public and private interest factors, that's true. So one thing that I found confusing was that, and some of the other judge's questions have hit on this, but in, for example, the, in the Apple litigation, the district court said, you know, Apple alleges this hacking occurred against Apple's computers and servers. And in this state, my understanding is it's exactly the same hacking misconduct that is alleged in this case, but the court said, I don't think there's, I have no reason to believe that, you know, the misconduct at issue in this case occurred in California or there's no local interest. I'm not sure how you reconcile those. I think Judge Donato explained in his order in this case exactly why he viewed the two cases differently. And I think he was entirely right, Your Honor. In the Apple case, Apple, of course, was the plaintiff, was the party harmed, and the harm occurred to it in the Northern District of California. It was suing in its home district, right, for harm that occurred there. This case is exactly the opposite. Well, not just the harm, though, but the actual misconduct, the hacking occurred there, which is the same hacking at issue in this case, even if the harm sort of transpired elsewhere that the misconduct at issue seemed to actually have a locus in California. In the Apple case, yes, because Apple was the target of the defendant's conduct, allegedly, and that conduct occurred in the Northern District of California. Here, the target of the defendant's conduct is allegedly against these Salvadoran journalists in El Salvador. That's where the misconduct occurred, Your Honor. But the plaintiffs say that they were harmed because of something that happened in the Northern District of California. And I'm thinking about it from a trial perspective, that if we have U.S. citizens or lawful U.S. party in the Northern District of California, it's really hard at trial to get third parties from another district to come to your district. So that's why you can sue them in the district where they are so they're within the subpoena power for trial. That's why it made sense to me that the U.S. citizen plaintiff and the lawful resident plaintiffs would choose Northern District of California. Why shouldn't that be considered? Well, it was considered by Judge Donato, Your Honor. And what he said was that the relevance of the allegations in terms of Apple servers was of completely secondary importance to the plaintiff's claims. The plaintiff's claims, remember, are for hacking to their phones. But I thought he also said, and any interest that this district and California residents and even the U.S., they'll be taken care of in the Apple litigation, which is no longer with us. Right. But, Your Honor, the harm here is to the plaintiffs, not to Apple. Apple's not a party. The harm to them is that their phones were allegedly hacked, and that occurred in El Salvador. They need proof from the Northern District of California, that's within the Northern District of California, to prove how the defendant caused them harm. The allegation is that the defendants here developed the Pegasus software by using Apple servers. And I agree with you, Judge Beatty. It's not even clear that the servers in question that Apple had were actually located in the  No, but it is alleged. Well, no, actually it wasn't, Your Honor. Not in explicit terms. What they said was, obviously, we don't know. On information and belief, we think that Apple servers were used, and Apple has some servers in California. That's the most that they said. But the more important part, Your Honor, and what Judge Donato stressed, is that the deployment of the software occurred entirely in a foreign country. That is the conduct that's at the heart of this case, and that's the way Judge Donato put it. He said the nub of this case involves foreign actors in a foreign country attacking the phones of foreign journalists. So is there, the technical aspects of this have been murky to me, but it seems that what you're saying is Apple products and servers may have been involved in the development of Pegasus, but the plaintiff's claims are not based on the development of Pegasus. They're based on its deployment, and the deployment is not alleged to have occurred in the Northern District of California. Well, I will point you to, it's paragraph 43 of the amendment complaint, and it's the, there are not a ton of allegations about this, but the one allegation that I would point Your Honors to is what the plaintiffs say. They say the malicious data caused the device to retrieve Pegasus, the software at issue, and other malicious data precipitating the Pegasus infection through a network of servers operated and or maintained by defendants, not by Apple. The allegation is that the servers that were used to deploy the attack occurred in El Salvador, where the plaintiffs were located. So you're right, Judge Simon, that the allegation regarding Apple servers is part of the case. I'm not denying that, but it is a highly secondary part of the case. It is not the nub of the dispute, and what Judge Donato, the reason Judge Donato distinguished between the two cases is because in Apple, of course, that was the entirety of the case. And so it made sense, as you said, for the litigation to be based there. This litigation involves attacks on foreign journalists in a foreign country by foreign actors. It is a completely different scenario from the standpoint of a foreign non-convenience analysis. Would this case be different if it had been brought in Washington, D.C. or in New York, where two of the plaintiffs resided? Well, it's possible that the analysis could have been different. We would still be talking about one plaintiff out of 18 who lived in Washington, D.C., and that plaintiff is not a U.S. citizen, the person who lived in D.C. The analysis potentially could have been different, but the relevant analysis occurs at the forum level. It is not just the country writ large. So what Judge Donato properly focused on was the fact that, hey, I'm in the Northern District. That's where this case has been filed. None of these plaintiffs has any connection to the Northern District. None of them live here. None of them work here. None of them has ever set foot in the Northern District, as far as the record shows. And the defendants, none of the defendants have any people here. We submitted a declaration from NSO's CEO that has said, we do no business in the Northern District of California. We have no offices there. All of our witnesses and evidence are in Israel. So the plaintiffs argue that that was not specific enough and that the district judge shifted the burden to the plaintiffs on the availability of witnesses and evidence. How do you respond to that? Our cases say, the court's cases say, that you do not have to get into the level of specificity that the plaintiffs are demanding. That it is, you do need to make an evidentiary showing, but we did that at SER 3 by submitting a declaration from NSO's CEO. And what the CEO said is that we have no offices here. We do no business here in the Northern District. All of our evidence and all of our witnesses are in Israel. There was no, I'm not sure what else we could have submitted to be more specific than that. Whatever witnesses and evidence we were going to put on would have come from Israel because that's where all of the evidence and the witnesses were. Well, they're arguing that there's case law that says you had to name specific witnesses. I don't think that that is the case, Your Honor. I cannot remember the specific case that I have in mind, but there actually was a case in which this court analyzed, like, yeah, how specific do you have to get? And what the court said was that you don't need to get into, well, here are the names of all of the witnesses. We've done all of the investigation to determine which evidence and which witnesses we would put on. Because at this preliminary stage of the case, that would sort of defeat the purpose of a form non-analysis. Well, is it problematic that the district judge then couched it in terms of the plaintiffs not coming forward with witnesses in the district? I don't think so, Your Honor, and the plaintiffs have said that somehow the judge flipped the burden. I don't think that's what happened. I think it's as you suggested in your questioning. The judge pointed out that, listen, I have a record in front of me that says that all of the defendant's evidence and witnesses are in Israel. There's no contrary evidence to suggest that there's any presence of witnesses and evidence from the defendants in the Northern District. So let me turn to what the plaintiffs have. And there's been no showing by the plaintiffs at all that any of their evidence or witnesses would be in the Northern District. And as I said, because none of them has any connection to the Northern District, we don't even have any suggestion that they've ever set foot in the Northern District. So when the judge was doing the relative weighing of the conveniences, I think it was entirely appropriate for the judge to point out that there's been no showing that the plaintiffs are going to have any evidence here in the Northern District. And I know from the undisputed record that all of the evidence from the defendants is going to be in Israel. So there's really nothing for me to weigh is the way the judge properly looked at it. The only other point I want to make about the Apple servers is that the judge did point out at ER 8 that the plaintiffs below never made any argument that they needed evidence to prove their case from Apple, from any third party evidence from Apple, or that Apple servers were central to the form non-analysis. So I would submit to you that the judge could not possibly have acted illogically or implausibly in not crediting or not putting more weight on a factor that the plaintiffs themselves below never even raised. Unless the court has any further questions. Okay, thank you. May I ask you to begin with a technological answer? Yes. And that is, do the plaintiffs contend that there was any use of Apple servers, regardless of where they may be located, was there any use of Apple servers in deploying the Pegasus software that ultimately caused the alleged injury? Yes, we do. And can you tell me where and what they allege? Yes. If I may quote you from our brief before the district court, the plaintiffs alleged in the amended complaint that defendants used Apple ID accounts to discover vulnerabilities in Apple software, probe Apple servers and services, and to test the software that defendants developed to infect iPhones with Pegasus. So that's the development piece of it. Plaintiffs then went on to explain that defendants and their clients then used Apple ID accounts to deliver Pegasus through those exploits to target iPhones. The exploits used against plaintiffs, known as Kismet and forced entry, relied on Apple ID accounts to send malicious data through Apple's iMessage service and temporarily stored the Pegasus file on one of Apple's iCloud servers before delivery to a target's phone. So it is abundantly clear, we made it clear to the district court that we have alleged that defendants targeted Apple both in the development of the exploits and then the deployment of Pegasus through those exploits. And do you have a record site where that was? Yes. So that's at paragraph 43 of the amended complaint. I would point the court to paragraphs 40 through 45 for the full picture. And the brief you're talking about to the district court? Yes. That's right up top in the introduction. Okay. Thank you. And so, Your Honor, that speaks to the district court's error to, in failing to credit the well-pleaded allegations and plaintiff's complaint on a motion to dismiss as it was required to do. And it also speaks to the relevance of Apple to this case as it was made abundantly clear through the briefing to the district court. I would just note that in almost every single case that defendants rely on in arguing for affirmance of the district court's dismissal for forum nonconvenience, there was pending litigation in the proposed alternative forum. And the exact opposite is true here. The courts have recognized the convenience of allowing litigation to proceed where there are related proceedings already underway. And the district court did repeatedly defer to defendants instead of to plaintiffs as it was required to do here. All right. Thank you. Counsel, thank you both for your arguments this morning. They were helpful. And this case is submitted.
judges: BADE, SUNG, Simon